SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN T. BROOKS, Cal. Bar No. 167793
  JBrooks@sheppardmullin.com
THOMAS R. PROCTOR, Cal. Bar No. 246919
  TProctor@sheppardmullin.com
JARED K. LEBEAU, Cal. Bar No. 292742
  JLebeau@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:  619.338.6500
Facsimile:   619.234.3815

Attorneys for Travelers Property Casualty
Company of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PACIFIC SPECIALTY INSURANCE COMPANY, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:17-cv-05972-TJH-E<br><br>Mag. Charles F. Eick<br>Courtroom 750, 7th Floor<br><br>**TRAVELERS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER RE SUBPOENA TO GLASER WEIL FOR DOCUMENTS FROM *ARCH V. TRAVELERS***<br><br>Date:       July 5, 2019<br>Time:      9:30 a.m.<br>Crtrm:    750<br><br>Complaint Filed:  July 12, 2017<br>Pretrial Conf:       July 15, 2019<br>Trial Date:             TBD |

Case No. 2:17-cv-05972-TJH-E

SMRH:4853-0125-4297.1      TRAVELERS' SUPPLEMENTAL MEMORANDUM MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER RE SUBPOENA TO GLASER WEIL

## I. INTRODUCTION

PSIC's introductory statement to the joint stipulation shows why Travelers' motion to quash and/or for protective order should be granted. PSIC presents a laundry list of missteps that it claims Travelers made *in this case*. While PSIC's introductory statement omits critical facts, and mischaracterizes others, it perfectly underscores why discovery relating to the *Arch* litigation is improper. Whether Travelers is liable for bad faith in *this case* will depend on the facts and circumstances of *this case*. What Travelers did in the *Arch* case has no relevance to whether Travelers acted appropriately in this case.

PSIC's arguments lack merit for the following reasons:

- Travelers has standing to bring a motion to quash because PSIC's subpoena seeks information that is private and privileged under California law. Moreover, in the alternative, Travelers seeks a protective order. PSIC does not even attempt to argue that Travelers lacks standing to bring a motion for protective order.

- California law explicitly provides that information obtained as part of an insurance claim *or lawsuit* is private and privileged.

- PSIC does not even attempt to argue that it has a "compelling need" for the private information it seeks. That's because it does not.

- PSIC ignores the numerous cases from around the country holding that discovery regarding other claims is irrelevant. PSIC's reliance on cases involving punitive damages to establish relevance is misplaced. PSIC's complaint does not allege a claim for punitive damages.

- PSIC implicitly concedes that allowing discovery of the *Arch* case will lead to derivative litigation.

- Contrary to PSIC's claims, proportionality requires more than "a minimal showing" of importance. Regardless, PSIC has not, and cannot, show that this discovery is important.

## II. TRAVELERS HAS STANDING TO BRING BOTH A MOTION TO QUASH *AND* A MOTION FOR PROTECTIVE ORDER

As an initial matter, Travelers has standing to bring this motion for multiple reasons.  *First*, as PSIC notes, "[t]he general rule… is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."  Joint Stip., p. 6:11-16 (*quoting Calif. Sportfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014)).  By statute in California, private information obtained during the course of an insurance claim *or* lawsuit is "privileged information."  Cal. Ins. Code § 791.02(v) (defining "privileged information" as information that "relates to a claim for insurance benefits *or a civil or criminal proceeding* involving an individual") (emphasis added); *see, e.g., Burdick v. Union Sec. Ins. Co.*, 2008 WL 11337796, at *4 (C.D. Cal. Jan. 4, 2008) ("California courts have treated the right to privacy as a privilege in the discovery context….").

In this diversity case, California law applies as to the right of privacy.  *Crews v. V. Domino's Pizza Corp.*, 2009 WL 10672352, at *5 (C.D. Cal. Aug. 20, 2009); *accord Cholakyan v. Mercedes-Benz USA, LLC*, 2011 WL 7575379, at *7 (C.D. Cal. Dec. 20, 2011).  Because the California insurance code, and California courts, treat the right to privacy as a privilege, under the authority cited by PSIC, Travelers has standing to bring a motion to quash.

*Second*, under F.R.C.P. 45(d)(3)(iii), the Court "is required" to quash a subpoena that "requires disclosure of *privileged or other protected matter*." (Emphasis added)*; see also Lee v. Glob. Tel*Link Corp.*, 2017 WL 10575166, at *9 (C.D. Cal. Sept. 6, 2017) ("to the extent the customer information protected by the subject state statutes amounts to 'protected matter,' a plain reading of Rule 45 reflects that a court may properly prohibit disclosure by quashing a subpoena seeking such information.").  Again, under California law, the privacy rights of

SMRH:4853-0125-4297.1

-2-

Case No. 2:17-cv-05972-TJH-E
TRAVELERS' SUPPLEMENTAL MEMORANDUM MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER RE SUBPOENA TO GLASER WEIL

third-party insureds and third-party claimants constitute "privileged" and "protected matter." *See* Cal. Ins. Code, §§ 791.02(s), (v); 791.13(a).

*Third,* numerous courts have recognized that parties do "have standing to move to quash a subpoena seeking personal information." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010); *Loop AI Labs Inc v. Gatti*, , 2016 WL 787924, at *2 (N.D. Cal. Feb. 29, 2016); *accord J.T. Shannon Lumber Co. v. Gilco Lumber, Inc.*, 2008 WL 3833216, at *1 (N.D. Miss. Aug. 14, 2008) (defendant had standing to quash third party subpoena that sought e-mails containing private information of defendant's employees).  Here, the subpoena seeks personal information of third-party insureds and claimants.

*Fourth*, PSIC ignores that, in addition to quashing the subpoena, Travelers has also asked the Court to issue a protective order under FRCP 26(c).  It is well-settled that "[a] party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *In re REMEC, Inc. Sec. Litig.*, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information."); *see also Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C.), on reconsideration, 232 F.R.D. 6 (D.D.C. 2005) (deeming defendant's motion to quash to be a motion for protective order).  Thus, even if the Court finds Travelers does not have standing to bring a motion to quash, it can and should find that Travelers has standing to bring a motion for protective order.  PSIC does not even try to argue otherwise.

*Finally*, under California law (which controls this dispute over privacy rights), insurance companies not only have standing, they have an obligation to resist discovery that seeks the unauthorized disclosure of private information.

*Valley Bank of Nevada v. Superior Court,* 15 Cal. 3d 652, 658 (1975); *Board of Trustees v. Superior Court*, 119 Cal. App. 3d 516, 525-526 (1981) ("The custodian [of private information] has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is the subject of [it] is entitled to expect that his right will be thus asserted'").

### III. THE SUBPOENAS SEEK PRIVATE INFORMATION

PSIC argues that the subpoena to Glaser Weil does not invoke privacy concerns because it is only seeking litigation documents. As Travelers explained in its portion of the joint stipulation, however, California Insurance Code section 791.02(v) explicitly defines "privileged information" as insurance information obtained in a civil proceeding:

> "Privileged information" means any individually identifiable information that both:
>
> (1) Relates to a claim for insurance benefits *or a civil or criminal proceeding* involving an individual.
>
> (2) Is collected in connection with or in reasonable anticipation of a claim for insurance benefits *or civil or criminal proceeding* involving an individual….

Here, PSIC's subpoena seeks documents that were collected in connection with both a claim for insurance benefits *and* a civil proceeding. Thus, the subpoena seeks information that falls squarely within the definition of private, privileged information under section 791.02(v).

Similarly, PSIC argues that Insurance Code section 791.13 does not apply because Glaser Weil is a law firm, not an "insurance institution, agent, or insurance support organization…." But Glaser Weil was hired by Arch, an insurance company. Under general principles of agency law, Glaser Weil was Arch's agent. *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 107 Cal. App. 4th 54, 69, 131 Cal. Rptr. 2d 777, 788 (2003) ("The relationship of attorney and client is one of agent and principal.")

Moreover, it would defeat the very purpose of the statute if PSIC could obtain information from Arch's lawyers that it could not obtain if it served a subpoena directly on Arch. The Court should not condone such an end run around the protections of Insurance Code section 791.13.

PSIC also argues that it is not required to comply with the provisions of C.C.P. section 1985.3. However, there is a split of authority on this issue. Several district courts have held, especially in diversity cases involving state law claims, that the protections of C.C.P. 1985.3 do apply. *See, e.g.*, *Robinson v. Kia Motors Am., Inc.*, 2011 WL 2433369, at *2 (E.D. Cal. June 13, 2011) ("[S]pecific state statutes precluding, or greatly limiting, the production of information are not simply privilege statutes, but rather substantive policy statutes. Such statutes may govern the activities of state citizens, not only in litigation, but in everyday life."). Given the significant importance that California places on privacy rights, this Court should apply the protections mandated by C.C.P. section 1985.3.

Finally, PSIC argues that Travelers has not cited any authority that the right to privacy extends to the documents sought by PSIC's subpoena. This is simply untrue. As noted above, Travelers' opening papers cited Insurance Code section 791.02(v), which explicitly defines "privileged information" as information obtained in a civil proceeding. In addition, Travelers' moving papers cited numerous other authorities that discussed the right to privacy in general, and the right to privacy in insurance information in particular. Joint Stip. at pp. 11-14.

## IV. PSIC HAS NOT SHOWN A "COMPELLING NEED" FOR THE INFORMATION SOUGHT

As set forth in Travelers' opening brief, because the subpoena seeks private information, PSIC must show (1) direct relevancy, (2) a "compelling need" for the discovery that outweighs the fundamental right to privacy, and (3) the discovery is narrowly tailored to ensure maximum protection of private information. Yet PSIC does not even attempt to satisfy these standards. This is an implicit concession that

the information is not directly relevant, that PSIC does not have a compelling need for it, and that the discovery is not narrowly tailored. For this reason alone, the Court should grant Travelers' motion.

## V. THE *ARCH* CASE IS IRRELEVANT

### A. PSIC Does Not Address the Numerous Authorities That Have Held Discovery Regarding Other Claims Is Irrelevant

In its portion of the joint stipulation, Travelers cited to authorities from all over the country which have denied discovery regarding other claims because it is manifestly irrelevant. PSIC completely ignores these authorities and does not even address them. PSIC's failure to address these authorities is an implicit concession that what happened in some other case, involving different insureds, different claimants, a different accident, different types of insurance policies, different adjusters, and different surrounding facts is ultimately irrelevant to whether Travelers acted reasonably in this case.

Instead of addressing these on-point authorities, PSIC argues that the *Arch* case is potentially relevant to show a "pattern and practice" of unreasonable conduct. But the cases that PSIC cites are inapposite because they either (1) dealt with punitive damages and/or (2) did not involve discovery regarding other claims.

Thus, in *Moore v. American United Life Ins. Co.*, 150 Cal. App. 3d 610, 625-26 (1984), the court allowed evidence regarding other claims because it was relevant to establish a "conscious course of conduct," which was necessary to establish a punitive damages claim. *See* Cal. Civil Code § 3294. *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 329 (1992) was also a punitive damages case, but it did not even involve discovery of other insurance claims.

Here, PSIC has not alleged a claim for punitive damages, and could not recover punitive damages in any event. Accordingly, *Moore* and *Mock* are inapplicable.

Again, as set forth in Travelers' opening papers, whether Travelers acted unreasonably in this case must be decided based on the facts of this case. Travelers cannot be liable for bad faith based on something that happened in some other, completely unrelated claim.

### B. PSIC's Criticisms Are Self-Defeating and Establish That Documents from the *Arch* Case Are Irrelevant

PSIC's introductory statement ticks off a laundry list of alleged missteps by Travelers. PSIC's criticisms are not at all an accurate reflection of Travelers' investigation. They also underscore why the discovery PSIC seeks is irrelevant.

- PSIC claims that Travelers did not ask Archer to provide missing pages or additional records. This is simply false. As reflected in Travelers' claim notes, Travelers spoke with Archer on May 28, 2015 and discussed specific records that Travelers was missing. Proctor Supp. Decl. Ex. 6 at CN 23-24; Ex. 8 at p. 145:6-17. Archer agreed to work on providing the missing documentation. Proctor Supp. Decl. Ex. 6 at CN 23-24; Ex. 8 at p. 146:22-147:9.

- PSIC criticizes Travelers for not asking Archer for permission to obtain records directly from Sinquimani's medical providers. But PSIC fails to mention that Archer had agreed to provide the missing documentation. *Id.*

- PSIC criticizes Travelers for not having the medical records evaluated by its in-house nurse or an outside doctor. As PSIC knows, however, Travelers' plan was to first obtain all of the medical records and then to send them out to an independent orthopedist and neurologist to be reviewed. Proctor Supp. Decl. Ex. 6 at CN 22, Ex. 7 at TRAV 1639. It would not make sense to send the records out for review when there were missing records.

- PSIC criticizes Travelers for not specifying "in writing" the additional information it needed. But PSIC does not cite any legal authority requiring an insurer to specify "in writing" the documents it needs. Again, Travelers promptly contacted Archer, explained to him the missing medical records that it needed, and

he agreed to provide them.  Proctor Supp. Decl. Ex. 6 at CN 22-23; Ex. 8 at p. 145:6-17, 146:22-147:9.

- PSIC alleges that Travelers "failed to assess the value of the claim." This is also false.  Travelers was continually updating its evaluation in its "bodily injury worksheets," which have been produced to PSIC.  Based on the information in the May 5, 2015 demand, Travelers had evaluated Sinquimani's claim to be worth $200,000 ($160,000 after applying 20% comparative fault).  Proctor Supp. Decl. Ex. 7 at TRAV 1638-1639.

- PSIC criticizes Travelers for not asking Sinquimani to submit to a physical examination (or independent medical examination, i.e., "IME").  Again, that was an option that Travelers was considering *after* it obtained all of the medical records and sent them out for a medical review.  Ex. 7 at TRAV 1639.  If the records review supported the alleged injuries, then a physical examination would not have been necessary.

- PSIC alleges that Travelers should have asked Archer to extension so it could subpoena the medical providers and take Sinquimani's deposition.  But PSIC does not disclose that the May 5, 2015 demand did not have a deadline, so there was no reason to ask for an extension.  *See* Proctor Decl. Ex. 4.  PSIC also ignores that the Travelers' adjuster was not aware of the C.C.P. section 998 demand before it expired.  Proctor Supp. Decl. Ex. 8 at  p. 47:7-16.  Defense counsel did not consult with Travelers before rejecting Archer's offer to extend the deadline.

Besides mischaracterizing the evidence, PSIC's criticisms are self-defeating for purposes of this motion.  Indeed, PSIC's criticisms merely highlight that the actual facts that matter are what happened *in this case*, not what happened in a completely different, unrelated case.  As set forth in Travelers' moving papers, below, and as numerous courts have held, what happened in some other case simply is not relevant to whether Travelers' conduct in this case was reasonable.

## VI. PSIC CONCEDES THAT DISCOVERY REGARDING THE *ARCH* CASE WILL LEAD TO DERIVATIVE LITIGATION

In the joint stipulation, Travelers argued that discovery regarding the *Arch* case would necessarily lead to a "mini-trial." After all, if PSIC attempts to argue that something Travelers did in *Arch* was unreasonable, Travelers will be forced to put on evidence to show its conduct in *Arch* was reasonable. Moreover, if PSIC is allowed to introduce evidence from one claim to show that Travelers had a "pattern and practice" of unfair claims handling, does Travelers then get to put on evidence from other claims to show that it does not? Where does this end? In addition, allowing PSIC to obtain discovery regarding the *Arch* case will almost certainly lead to further discovery disputes, motions in limine and other ancillary litigation.

PSIC does not dispute that discovery of the *Arch* case would necessarily lead to a mini-trial and ancillary litigation. Indeed, PSIC implicitly acknowledges that if it attempts to use evidence from the *Arch* case, it will lead to a "trial within a trial." Joint Stip at p. 22:7-8. This acknowledged threat of derivative litigation, alone, is sufficient grounds for the Court to grant Travelers' motion. *See e.g.*, *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5869580, at *9 (W.D. Tenn. Oct. 5, 2016) ("The court also shares the concern of many other courts that 'other claims' discovery would lead to even further discovery disputes and create extended mini-trials."); *Leksi, Inc. v. Fed. Ins. Co.,* 129 F.R.D. 99, 106 (D.N.J. 1989) (refusing to allow discovery of other claims because it "entails a frightening potential for spawning unbearable side litigation which, in my view, defeats the purpose and spirit of the discovery rules themselves").

## VII. THE DISCOVERY IS NOT PROPORTIONAL

In its portion of the joint stipulation, Travelers established that discovery regarding the *Arch* case is not proportional because (i) it is irrelevant, (ii) it seeks private information regarding third-party insureds and third-party claimants, (iii) PSIC had not shown direct relevance or a compelling need for the information, and

(iv) it would necessarily result in a mini-trial.  PSIC's responds that it need make "nothing more than a minimal showing [] that the discovery is important."  Joint Stip at p. 21:26-27.

PSIC is wrong.  Given the privacy implications involved, PSIC must show both direct relevance and a compelling need.  It has shown neither.  It must show that the discovery will not result in further discovery disputes and mini-trials.  PSIC concedes this will happen.  Under the circumstances, PSIC must do much more than make a minimal showing of importance.

## VIII. CONCLUSION

The subpoena to Glaser Weil is neither relevant, proportional nor necessary.  It violates privacy rights of third parties and would lead to further discovery disputes and ancillary litigation.  The Court should quash the subpoena and/or enter a protective order precluding PSIC from obtaining discovery relating to the *Travelers v. Arch* case.

Dated:  June 21, 2019          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By     *s/ Thomas R. Proctor*
       THOMAS R. PROCTOR
       Attorneys for Defendant Travelers Property
       Casualty Company of America